176 P.3d 722

In re the Marriage of Roger E. THOMP-
SON, Petitioner/Appellant,

v.

Tanya F. THOMPSON,
Respondent/Appellee.

No. 1 CA–CV 07–0048.

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 21, 2008.

Roger E. Thompson, Eagar, Petitioner/Appellant in propria persona.

Tanya F. Thompson, Payson, Respondent/Appellee in propria persona.

## OPINION

NORRIS, Judge.

¶ 1 Under Arizona Revised Statutes ("A.R.S.") section 25–408(B) (2007), a parent granted joint custody or parenting time is entitled to at least 60 days advance written notice before the other parent may "[r]elocate the child more than one hundred miles within the state." This appeal requires us to discuss how the 100 miles of A.R.S. § 25–408(B) should be measured. We hold that, under A.R.S. § 25–408(E), if a parent awarded joint custody or parenting time relocates the child with court permission, the miles of that court approved relocation may not be considered when determining whether a subsequent relocation is more than 100 miles within the state. We also hold the 100 mile condition should be measured from the relocating parent's physical location with the child as of the date of the court order or written agreement granting custody or parenting time to both parents.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶ 2 In September 2004, Petitioner/Appellant Roger Thompson ("Father") petitioned for a legal separation and Respondent/Appellee Tanya F. Thompson ("Mother") responded by asking for a dissolution of marriage. Mother, who then lived in Alpine, Arizona, petitioned the court for temporary care, custody, and control of the couple's three children and asked that Father, who lived approximately 27 miles away in Eagar, Arizona, be awarded temporary visitation. Mother also requested "[t]hat no clause would hinder [her] from moving beyond 25 miles" because she wished to move to Show Low, Arizona, which is approximately 48 miles from Eagar. Father petitioned the court for a temporary order granting him custody of the children, and at the hearing on temporary orders, objected to Mother's request to move to Show Low. In October 2004, the court denied Father's custody request and entered a temporary order granting custody of the children to Mother with visitation to Father. It further ordered "the visitation situation will remain intact until the divorce is final and that does not preclude [Mother] from moving to Show Low."

¶ 3 As authorized by the court in its temporary order, Mother moved from Alpine to Show Low ("first move"), a distance of approximately 73 miles. Although the record does not reveal when Mother made the first move, she did so at some point before May 2005, when the court entered a decree dissolving the parties' marriage. The dissolution decree awarded legal custody of the children to Mother and gave Father "liberal" parenting time. More than a year later, Mother notified the court she intended to move from Show Low to Payson, Arizona ("second move"), a distance of approximately 90 miles, to start a new full-time job. Father objected and argued Mother's move to Payson exceeded 100 miles because Payson is approximately 138 miles from Eagar. Accordingly, he asked the court to enjoin Mother from moving to Payson. A.R.S. § 25–408(D) ("Within thirty days after notice is made [under A.R.S. § 25–408(B)] the nonmoving parent may petition the court to prevent relocation of the child."). The court refused to enjoin Mother's relocation, finding A.R.S. § 25–408 inapplicable because Mother "[wa]s only moving 90 miles away."

¶ 4 Father then moved for a new trial and argued A.R.S. § 25–408(B) required the court to calculate the mileage of Mother's relocation by adding the miles of her first move to those of her second move. He also argued the statute required the court to calculate the 100 miles from his residence in Eagar to her new location in Payson, a distance of approximately 138 miles, not from Mother's location in Show Low.

¶ 5 The court denied the motion. It ruled "[t]he [s]tatute which [Father] seeks to invoke is not triggered by a prospective move of less than 100 miles" because "[a]t the time of the decree, the parties' children resided in Show Low .... [and Mother] thereafter relocated to Payson ... 90 miles away." The court also ruled the second move "was separate and distinct from that associated with the parties' separation in 2004."

¶ 6 Father timely appealed the superior court's rulings. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) (2003) and 12-2101(F)(1)-(2) (2003).[1]

## DISCUSSION

### A.  Total Mileage of Mother's Moves

¶ 7 On appeal, Father argues A.R.S. § 25-408(B) and (D) were applicable to Mother's move to Payson.[2] As he sees the situation, the court should have measured the 100 miles by adding the miles of Mother's first move to the miles of her second move. The issue Father presents—how the 100 miles should be calculated—raises a question of statutory interpretation, which we review de novo. *Thomas v. Thomas,* 203 Ariz. 34, 36, ¶ 7, 49 P.3d 306, 308 (App.2002).

¶ 8 When determining the meaning of a statute, we look first to its plain language. *In re Maricopa County Superior Court No. MH 2002-000767,* 205 Ariz. 296, 298, ¶ 9, 69 P.3d 1017, 1019 (App.2003). Section 25-408(B) provides:

> If by written agreement or court order both parents are entitled to custody or parenting time and both parents reside in the state, at least sixty days' advance written notice shall be provided to the other parent before a parent may do either of the following:
> 1.  Relocate the child outside the state.
> 2.  Relocate the child more than one hundred miles within the state.

¶ 9 According to the plain language of the statute, subsection B is not triggered until a court order, or a written agreement, entitles the parents to joint custody or parenting time. However, subsection B becomes inapplicable "if provision for relocation of a child has been made by a court order that is dated within one year of the proposed relocation of the child." A.R.S. § 25-408(E).[3]

¶ 10 In this case, the court approved the first move and Mother completed the first move within one year of the court's approval. Therefore, Mother's first move met the criteria of subsection E and so subsection B did not apply to that move. When, as here, subsection E exempts a move from subsection B, the miles of the exempted move should not be included within subsection B's 100 mile condition. Including the miles from a move exempted by subsection E would permit the non-relocating parent to relitigate the merits of the court-approved exempted move, undermining the court's approval of that move.

¶ 11 Because it approved Mother's first move and subsection E applied to that move, the superior court was not required to take into account the miles of that move in determining whether A.R.S. § 25-408(B) and (D) applied to Mother's move to Payson. Subsection B was inapplicable to Mother's move to Payson and Father was not entitled to petition the court under subsection D to prevent relocation of the children.[4]

---

1.  Mother did not file an answering brief. Although we could regard this as a confession of error, *see* Arizona Rule of Civil Appellate Procedure 15(c), in our discretion, we decline to do so. *Nydam v. Crawford,* 181 Ariz. 101, 101, 887 P.2d 631, 631 (App.1994).

2.  If a parent is entitled to petition a court to prevent relocation of the child under A.R.S. § 25-408(D), the "court shall determine whether to allow the parent to relocate the child in accordance with the child's best interests." A.R.S. § 25-408(G). "The burden of proving what is in the child's best interests is on the parent who is seeking to relocate the child." *Id.*

3.  In full, A.R.S. § 25-408(E) states:

    > Subsection B of this section does not apply if provision for relocation of a child has been made by a court order or written agreement of the parties that is dated within one year of the proposed relocation of the child.

4.  Because A.R.S. § 25-408(E) rendered A.R.S. § 25-408(B) inapplicable to Mother's first move,

*B. Miles from Father's Residence*

¶ 12 Next, Father argues the superior court misinterpreted A.R.S. § 25–408(B) because it should have calculated the 100 miles from his residence in Eager.[5] This issue also raises a question of statutory interpretation.

¶ 13 Section 25–408(B) does not identify the starting point for calculation of the 100 miles. When a statute is silent regarding an issue "we must look beyond the statutory language and consider the statute's effects and consequences, as well as its spirit and purpose." *Calmat of Arizona v. State ex rel. Miller*, 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993). "Statutes must be given a sensible construction that accomplishes the legislative intent and which avoids absurd results." *State v. Gonzales*, 206 Ariz. 469, 471, ¶ 12, 80 P.3d 276, 278 (App.2003) (quoting *Arizona Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 233, 928 P.2d 653, 657 (App.1996)) (internal quotation marks omitted).

¶ 14 As discussed above, A.R.S. § 25–408(B) applies when there is a written agreement or court order entitling both parents to custody or parenting time. In such a situation, the statute requires each parent to comply with the notice requirements before he or she attempts to relocate their child more than 100 miles within the state. By imposing this obligation on each parent, the legislature was attempting to ensure that when both parents are granted custody or parenting time, neither parent will interfere with the custody or parenting time granted to the other parent by relocating with the child and making it more difficult and costly for the non-relocating parent to have custody or parenting time with the child. But, as is clear from other subsections of A.R.S. § 25–408,

the legislature also intended to give a parent granted joint custody or parenting time some unrestricted flexibility to decide where to live with his or her child. *See* A.R.S. § 25–408(D), (G). Section 25–408, when read as a whole, thus reflects the legislature's efforts to balance these competing interests. Accordingly, we believe A.R.S. § 25–408(B) should be construed as allowing a parent granted joint custody or parenting time the right to move up to 100 miles from that parent's physical location with the child as of the date of the written agreement or court order entitling both parents to custody or parenting time.

¶ 15 When the court entered the decree of dissolution and established the custody and parenting time arrangement the children were living with Mother in Show Low. Under the construction of A.R.S. § 25–408(B) we adopt in this opinion, Mother was entitled to relocate with the children as long as that relocation did not amount to "more than 100 miles within the state" from her physical location in Show Low. Because Show Low is less than 100 miles from Payson, subsection B did not apply to Mother's move to Payson.

**CONCLUSION**

¶ 16 For the foregoing reasons, we affirm the superior court's determination that A.R.S. § 25–408(B) was inapplicable to Mother's relocation to Payson.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and MICHAEL J. BROWN, Judge.

---

we need not decide whether subsection B applies when a parent makes serial non-court approved relocations that individually are less than 100 miles but, in the aggregate, total more than 100 miles.

5. Father cites an Arizona Supreme Court booklet titled *Things You Should Know about Custody and Parenting Time* as support for this argument. This booklet states, "If both parents live in Arizona, the parent with physical custody desiring to move with the child must give 60 days' notice

to the other parent before the child may be moved more than 100 miles from the other parent or from the state." Arizona Supreme Court, *Things You Should Know about Custody and Parenting Time* 10 (2006), http://www.supreme.state.az.us/dr/Pdf/custvis.pdf. Although we are bound by decisions of our supreme court, *City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993), this booklet does not constitute such a decision and, therefore, we are not bound by it.